**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

LISA LAM, individually and
on behalf of all others similarly situated,

Plaintiff,

vs.

DOREL HOME FURNISHINGS, INC.

Defendant.

**Civil Action No.: ______________**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Lisa Lam, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendant Dorel Home Furnishings, Inc. ("Dorel" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

## PRELIMINARY STATEMENT

1. When a manufacturer sells a product, it has a duty to ensure that the product functions properly and safely for its advertised use and is free from defects. When a manufacturer discovers a defect, it must explicitly disclose the defect and make it right or cease selling the product.

2. Plaintiff brings this action on behalf of herself, and all other similarly situated persons who purchased any of Defendant's "Cosco Kitchen Steppers" sold at several major retailers, such as Walmart, Target, Amazon and others, under model numbers 11349WHG1E,

11349GRN1E, 11349NVY1E, 11349WHG2, 11349GRN4, 11349GRN12, 11349WHG12C, 11349WHG12W, 11349WHG4F, and 11349CBWH4T ("Kitchen Stepper" or "recalled product").[1]

3. The kitchen steppers are sold in white/gray, green, navy, and blue colors.[2]

4. This action is brought to remedy various violations of law in connection with Defendant's manufacturing, marketing, advertising, selling and warranting of the Recalled Kitchen Steppers.

5. Specifically, these Recalled Kitchen Steppers have a dangerous defect that involves the bar handle used for consumer stability and balance. The safety bar can detach and even break off during use by the consumer. This is due to a weak connection to the main frame of the unit. So far, there have been 34 reported instances of this bar breaking or disconnecting during use, causing head injuries ("the Defect").[3]

6. Around August 2025, Dorel recalled about 302,000 of the above referenced Recalled Kitchen Steppers.[4]

7. The 302,000 Kitchen Steppers sold for between $56.00 and $70.00.[5]

8. The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## **JURISDICTION AND VENUE**

---

[1] https://www.al.com/news/2025/08/nationwide-recall-for-product-sold-at-target-amazon-and-walmart-due-to-injuries.html (last accessed September 18, 2025)

[2] *Id.*

[3] *Id.*

[4] https://www.coscoproducts.com/pages/dorel-home-furnishings-recalls-cosco-2-step-kitchen-steppers-due-to-fall-and-injury-hazards (last accessed September 18, 2025)

[5] https://www.cpsc.gov/Recalls/2025/Dorel-Home-Furnishings-Recalls-Cosco-2-Step-Kitchen-Steppers-Due-to-Fall-and-Injury-Hazards (last accessed September 18, 2025)

9. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed Plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

10. This Court has personal jurisdiction over Defendant because Defendant has its principal place of business in the State of Missouri.

11. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. The Defendant has its principal place of business in this District, and sells and distributes their Kitchen Steppers throughout the United States and in this District.

**PARTIES**

12. Lisa Lam is a citizen of the State of New York and resides in Staten Island, New York. She is located within Richmond County, New York.

13. Defendant Dorel Home Furnishings, Inc. is a Delaware corporation with its principal place of business in Wright City, Missouri. Dorel's s principal place of business is located at 410 East First Street South, Wright City, Missouri 63390.

14. Defendant designs, manufactures, markets, distributes, services, repairs, and sells Kitchen Steppers, including the Recalled Kitchen Steppers, nationwide. Defendant is the warrantor and distributor of the Recalled Kitchen Steppers in the United States.

15. Defendant, through various entities, markets, distributes, warrants, and sells Kitchen Steppers, including the Recalled Kitchen Steppers, in multiple locations across the United States.

## FACTUAL ALLEGATIONS

16. On or about August 24, 2024, the Plaintiff purchased a "Cosco Kitchen Stepper" from Amazon for $56.

17. During the use of the Cosco Kitchen Stepper, the safety bar detached, causing the Plaintiff to fall.

18. As a result of the fall, the Plaintiff sustained minor injuries and experienced body pain.

19. Plaintiff's Kitchen Stepper has the model number 11349GRN1E, which is included within Defendant's Recall.[6]

20. Based on Defendant's active and persistent promotions touting the quality of its Kitchen Steppers and her admiration of Dorel Kitchen Steppers, Plaintiff considered Dorel a quality company with a strong reputation for producing reliable Kitchen Steppers.

21. In addition to Dorel's reputation through its marketing and promotion, Plaintiff decided on the specific model because she believed it was a high-quality Kitchen Stepper.

22. Since February of 2021, Defendant has designed, manufactured, distributed, and sold the Recalled Kitchen Steppers. Defendant has sold, directly or indirectly, through retail outlets, nearly 300,000 Recalled Kitchen Steppers nationwide.[7]

23. Mentioned earlier and discussed in more detail below, the Recalled Kitchen Steppers contain a design defect that causes a serious safety concern.

24. Defendant has offered an inadequate remedy. Consumers must contact Dorel to receive a free repair kit, which includes shipping. The repair kit includes a sliding locking

---

[6] Exhibit A.
[7] *Id.*

mechanism that attaches to the safety bar to prevent the safety bar from detaching or breaking during use.[8]

25. Assuming that the Recall was effective and offered a true resolution, Plaintiff is still burdened with a Kitchen Stepper that has been devalued by Defendant's actions because the value of a Kitchen Stepper with a known and dangerous defect is worth much less than a Kitchen Stepper with a proper design.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action on behalf of herself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

> **Nationwide Class:** All persons in the United States who purchased a recalled Dorel Kitchen Stepper.
>
> **New York Subclass:** All persons in New York who purchased a recalled Dorel Kitchen Stepper.

27. Together, the Nationwide Class and New York Subclass will be collectively referred to as the “Class" or "Classes." Members of these Classes will be referred to as "Class Members".

28. Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; (iii) an employee of the Court where this action is pending.

29. The proposed class definitions may be amended or modified from time to time.

30. The members of the Nationwide Class and New York Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative

---

[8] *Id.*

classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from public records.

31. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

32. The Proposed Classes are so numerous that the joinder of all members is impracticable. However, based upon the recall Notice, it is believed to be in the hundreds of thousands.

33. This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

34. **Numerosity: Fed. R. Civ. P. 23(a)(1):** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

35. **Typicality: Fed. R. Civ. P. 23(a)(3):** Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Kitchen Stepper that contained the same Defect found in all other Recalled Kitchen Steppers.

36. **Adequacy: Fed. R. Civ. P. 23(a)(4):** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class that she seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class action

litigation, and she intends to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

37. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3):** A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members, and questions of law and fact common to all Class Members predominate over questions affecting only individual class members. Class Members can be readily identified and notified based on, inter alia, Defendant's business records or other sources.

38. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4):** Common Questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

a. Whether the Dorel Kitchen Steppers designed and sold by Defendant possess a material defect;

b. Whether the Defect creates an unreasonable injury risk;

c. Whether Defendant knew or should have known that the Kitchen Steppers possessed the Defect at the time of sale;

d. Whether Defendant omitted to disclose the Defect;

e. Whether Defendant concealed the Defect, once it knew of the defect;

f. Whether Plaintiff and Class Members are entitled to damages;

g. Whether Plaintiff and Class Members are entitled to restitution of the purchase price they paid for their defective Kitchen Steppers; and,

h. Whether Plaintiff and Class Members are entitled to other equitable relief

## **CAUSES OF ACTION**

## COUNT I
## STRICT LIABILITY- DESIGN DEFECT

39. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

40. Plaintiff brings this claim against Defendant on behalf of herself and the Classes.

41. Defendant owed Plaintiff and the Classes a duty to reasonably and safely design, manufacture, market, and sell the Recalled Kitchen Steppers.

42. Defendant breached this duty as the design and manufacture of the Recalled Kitchen Steppers were defective, which caused the Kitchen Steppers to not be fit or suitable for their intended purposes.

43. Additionally, Defendant's defective design caused monetary damages to Plaintiff and the Classes as the Recalled Kitchen Steppers are now worth less compared to the Kitchen Stepper's value prior to the existence of the Defect, given the notoriety of the Defect.

44. Defendant did not exercise due care in the production of the Recalled Kitchen Steppers. Defendant's design horribly malfunctions, and many other mechanisms in all sorts of similar Kitchen Steppers that exist do not have this Defect.

45. Plaintiff suffered injury through Defendant's conduct. First, she sustained a physical injury when the product did not perform as expected during its ordinary use when she fell as a result of the defect in question. Second, she suffered injury in that she purchased a Kitchen Stepper that is now worthless and unsafe and was deprived the benefit of the bargain.

46. The design of the Recalled Kitchen Steppers' defect is unacceptable as other Kitchen Steppers produced by other companies and manufacturers work properly and do not have this same defect. In fact, Defendant has produced other Kitchen Steppers that do not have defects similar to the Recalled Kitchen Steppers.

## COUNT II
## STRICT LIABILITY – FAILURE TO WARN

47. Plaintiff incorporates the allegations set forth in the previous paragraphs as though set forth fully herein.

48. Defendant had a duty to warn Plaintiff and Class Members about the Defect and the true risks associated with the Kitchen Steppers.

49. As the manufacturer, Defendant was in a superior position to know about the defective Kitchen Steppers and their dangerous propensity to cause injury. However, Defendant failed to warn consumers, retailers, and regulatory agencies about the risks when it had the opportunity to do so.

50. Defendant failed to provide adequate warnings regarding the risks of the Kitchen Steppers before or at the time of sale, particularly if it continued selling the recalled products despite knowledge of the recall or other safety concerns.

51. Defendant had access to critical safety information regarding the injury risk associated with the Kitchen Steppers, yet failed to warn Plaintiff and Class Members, leaving them unaware of the dangers.

52. This failure to warn contributed to Plaintiff's physical injuries sustained during normal use of the stepper.

53. Despite knowing the risks, Defendant did not strengthen their warnings or provide adequate safety disclosures before selling the recalled products. Instead, Defendant actively concealed or ignored the need for stronger warnings, prioritizing sales over consumer safety.

54. Plaintiff and Class Members would not have purchased, chosen, or paid for the Kitchen Steppers had they known of the risk of injury caused by the Defect. Because Defendant failed to provide proper warnings, consumers were deprived of their right to make an informed purchasing decision.

55. The Defect proximately caused Plaintiff's and Class Members' damages, as they purchased and used a product that posed an unreasonable risk of harm without their knowledge.

56. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

**COUNT III**
**UNJUST ENRICHMENT**

57. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

58. Plaintiff brings this count on behalf of herself and the Classes. This count is pled in the alternative and in equity should the court determine there is no other basis for relief.

59. Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's worthless Recalled Kitchen Steppers.

60. Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class Members.

61. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Recalled Kitchen Steppers without providing safe securing mechanisms in the Recalled Kitchen Steppers, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

62. The circumstances, as described herein, are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

63. Defendant manufactured, marketed, and sold the Recalled Kitchen Steppers under the guise of these Kitchen Steppers being safe and operable, without defect. Instead, Defendant sold Kitchen Steppers that were unsafe.

64. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT IV
## NEGLIGENCE

65. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

66. Plaintiff brings this count on behalf of herself and the Classes.

67. Defendant caused Recalled Kitchen Steppers to be sold, distributed, marketed, promoted, and/or used by Plaintiff and the Proposed Classes.

68. At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Recalled Kitchen Steppers, including the duty to take all reasonable steps necessary to provide effective securing mechanisms in the Recalled Kitchen Steppers.

69. Defendant breached this duty by providing Recalled Kitchen Steppers with a Defect. For some time, Defendant has produced other Kitchen Steppers without this Defect, which is evidence that Defendant did not exercise proper care in producing the Recalled Kitchen Steppers.

70. Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that not providing effective securing mechanisms could cause or be associated with Plaintiff's and Class Members' injuries.

71. Defendant's alleged negligence included:

a Selling and/or distributing the Recalled Kitchen Steppers while negligently and/or intentionally not providing effective securing mechanisms; and

b Systematically failing to provide consumers with safe Kitchen Steppers in multiple states.

72. As a direct and proximate result of Defendant's negligence, Plaintiff and the Classes have suffered and will continue to suffer actual monetary damages.

73. Plaintiff sustained injury using the product during its ordinary use due to the defect that caused the product's recall. But for Defendant's negligent design, production, and marketing of Recalled Kitchen Steppers, Plaintiff and the Classes would not be physically and economically injured as they would not have purchased the worthless Recalled Kitchen Steppers.

74. Plaintiff's and Class Members' injuries were foreseeable as Defendant had received complaints from Plaintiff and Class Members regarding failure to provide a safe and effective securing mechanism in the Recalled Kitchen Steppers at the time of purchase of Defendant's Product.

75. Further, it is foreseeable that a Kitchen Stepper with a Defect would be worthless as it would be an incredibly dangerous Kitchen Stepper to use.

76. As a result of Defendant's breach, Plaintiff and the Classes were harmed in that they now own a useless Kitchen Stepper with a dangerous defect given Defendant's confounding lack of due care in its design and product.

77. Plaintiff and the Class Members seek actual damages, attorney's fees, costs, and any other just and proper relief available.

78. Plaintiff suffered physical and economic injury through Defendant's conduct in that she purchased a Kitchen Stepper that is now worthless and unsafe.

79. Plaintiff also suffered economic loss in reference to the value of her Kitchen Stepper. As a result of Defendant's Recall, Plaintiff's Kitchen Stepper is now worthless and unsafe.

80. Plaintiff also suffered damages in that Plaintiff and the Classes have been greatly inconvenienced by Defendant's Recall.

**COUNT V**
**DECEPTIVE ACTS OR PRACTICES, NEW YORK GBL § 349**

81. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

82. New York General Business Law Section 349 ("GBL § 349") states "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

83. Defendant's conduct alleged herein includes deceptive acts and practices in violation of GBL § 349.

84. Plaintiff and the New York Subclass seek monetary damages against Defendant, enjoining them from deceptively labeling, marketing, promoting, and describing the Kitchen Steppers. There is no adequate remedy at law.

85. Defendant failed to disclose that the Kitchen Steppers have a Defect. Defendant induced Plaintiff and the New York Subclass to purchase Defendant's Kitchen Steppers because had they known of the Defect, Plaintiff would not have bought the Kitchen Steppers. Defendant made the false and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

86. The Kitchen Steppers were mislabeled, unsafe, and worthless and thus, Plaintiff and the New York Subclass have incurred damages.

87. Defendant advertised the Kitchen Steppers as safe, which induced consumers including Plaintiff and the New York Subclass Members to buy Defendant's Kitchen Steppers.

88. Defendant's deceptive and misleading practices are in violation of New York General Business Law §349(a) and thus, Plaintiff and the New York Subclass have incurred damages.

89. Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, punitive, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

**COUNT VI**
**FALSE ADVERTISING, NEW YORK GBL § 350**

90. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

91. N.Y. Gen. Bus. Law § 350 states in part: "False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful."

92. N.Y. Gen. Bus. Law § 350a(1) states in part:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

93. Defendant's labeling/advertisements of the Kitchen Steppers contain false and materially misleading statements and omissions because it represents that the Kitchen Steppers

are safe and nowhere on the packaging does it say that the Kitchen Steppers are subject to inadvertent or accidental activation.

94. Defendant labeled, packaged, and advertised the Kitchen Steppers, which were labeled incorrectly, unsafe, and worthless. Accordingly, Plaintiff and the New York Subclass have incurred damages.

95. Defendant's advertising, packaging, and labeling made consumers including Plaintiff and the New York Subclass buy Defendant's Kitchen Steppers. If Plaintiff had known that the Kitchen Steppers had a dangerous defect, Plaintiff would not have bought the Kitchen Steppers.

96. Defendant made its false and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

97. Defendant's conduct is in violation of N.Y. Gen. Bus. Law § 350.

98. Defendant made the material misrepresentations described herein in its advertising and on the Kitchen Steppers' labeling.

99. Defendant's misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Kitchen Steppers were and continue to be exposed to Defendant's material misrepresentations.

100. Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, punitive, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## **COUNT VII**

## **VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT (MMPA)**

101. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

102. Defendant is a corporation with its principal place of business in Wright City, Missouri. Defendant designs, manufactures, markets, and sells merchandise, including the Recalled Kitchen Steppers, nationwide and in the State of Missouri.

103. The Recalled Kitchen Steppers are "merchandise" as defined by the MMPA, as they are goods sold in trade and commerce.

104. Plaintiff and the Class Members purchased the Recalled Kitchen Steppers for personal, family, or household purposes.

105. In connection with the sale of the Recalled Kitchen Steppers, Defendant engaged in deceptive and unfair practices in violation of the MMPA.

106. Defendant's unlawful practices included, but were not limited to, the concealment, suppression, and omission of material facts about the dangerous defect in the Kitchen Steppers' safety bar.

107. Defendant knew or should have known that the safety bar could detach or break, causing an unreasonable risk of injury, but failed to disclose this information to consumers. This omission of a material fact was a deception.

108. A reasonable consumer would have considered the safety bar defect to be an important fact in their purchasing decision.

109. Plaintiff and the Class Members acted as reasonable consumers would have in light of all the circumstances of the transaction. They were not aware of the defect and were led to believe the Kitchen Steppers were safe and without defect.

110. As a direct and proximate result of Defendant's unlawful practices, Plaintiff and the Class Members suffered an "ascertainable loss" of money or property.

111. The Kitchen Steppers they purchased are now worthless and unsafe due to the known defect and subsequent recall, depriving them of the benefit of the bargain.

112. Plaintiff and the Class Members are entitled to an award of actual damages, punitive damages, and reasonable attorneys' fees, as provided by the MMPA.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, on behalf of herself and members of the Classes, requests that the Court enter judgment in their favor and against Defendant, awarding as follows:

A. Certifying the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B. Declaring that Defendant is financially responsible for notifying the Proposed Classes Members of the pendency of this action;

C. Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D. Instituting an injunction requiring that Defendant engage in an adequate notice campaign and/or a recall;

E. Scheduling a trial by jury in this action;

F. Awarding pre- and post-judgment interest on any amounts awarded, as permitted by law;

G. Costs including reasonable attorneys’ fees, court costs, and other litigation expenses; and,

H. Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: September 19, 2025 Respectfully Submitted,

*/s/ James J. Rosemergy*
James J. Rosemergy, Esq.
Carey, Danis & Lowe
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Direct: 314-678-1064
Ph: 314-725-7700
Fax: 314-721-0905
jrosemergy@careydanis.com

AND

Paul J. Doolittle, Esq. (*Pro Hac Vice forthcoming*)
**POULIN | WILLEY**
**ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
Email: paul.doolittle@poulinwilley.com
cmad@poulinwilley.com